IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GMP TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 CV 7077 |
| | ) | |
| v. | ) | Judge Gottschall |
| | ) | Magistrate Judge Cox |
| ZICAM, LLC and MATRIXX | ) | |
| INITIATIVES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COUNTS
II-IV OF THE AMENDED COMPLAINT AND TO
<u>DISMISS ALL CLAIMS AGAINST DEFENDANT MATRIXX</u>

KEITH V. ROCKEY
KATHLEEN A. LYONS
AVANI C. MACALUSO
 Rockey, Depke & Lyons, LLC
 Sears Tower, Suite 5450
 233 South Wacker Drive
 Chicago, Illinois 60606
 Telephone: 312-277-2006
 Facsimile: 312-441-0570

Attorneys for Plaintiff

TABLE OF CONTENTS

I. The Background Facts ..................................................................................2

 A. The Parties and Cause of Action .......................................................2

 B. The Events Leading To the Filing Of The Lawsuit ..............................4

 C. The Events After The Lawsuit Was Filed...............................................6

II. Why The Motion Of Matrixx And Zicam Must Be Denied............................8

 A. As A Non-Owner Of The Patents, Matrixx
 Cannot Assert Preemption........................................................................9

 B. GMP Has Sufficiently Pled Bad Faith With
 Respect To The State Tort Claims .......................................................12

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

800 Adept, Inc. v. Murex Securities, Ltd.
 (Fed. Cir., 2008), 539 F.3d 1354 ...................................................................................13

Baig v. The Coca-Cola Company
 (N.D. Ill., 2009), 2009 WL 1470176 ...............................................................................12

Bell Atlantic Corporation v. Twombly
 (2007), 550 U.S. 544.........................................................................................................15

Foboha Gmbh v. Gram Technology, Inc.
 (N.D. Ill., 2008) 2008 WL 4619795 ........................................................................ 12, 14

Gibson v. City of Chicago
 (7th Cir., 1990), 910 F.2d 1510 .......................................................................................12

LDM Technologies, Inc. v. Rowen-Waters Group, LLC
 (E.D. Mich., 2005), 2005 WL 2449300............................................................................10

McZeal v. Sprint Nextel Corporation
 (Fed. Cir., 2007), 501 F.3d 1354 .....................................................................................15

Mikohn Gaming Corporation v. Acres Gaming, Inc.
 (Fed. Cir., 1998), 165 F.3d 891 .......................................................................................13

Steelcase Inc. v. Smart Technologies Inc.
 (W.D. Mich., 2004), 336 F.Supp.2d 714 .........................................................................10

Zenith Electronics Corporation v. Exzec, Inc.
 (Fed. Cir., 1999), 182 F.3d 1340 ......................................................................................9

Defendants, Zicam, LLC ("Zicam") and Matrixx Initiatives, Inc. ("Matrixx"), have filed a second motion to dismiss, asking this Court to dismiss the state tort claims (Counts II to IV) of the amended complaint against both defendants. Matrixx seeks to be dismissed as a party altogether.

Defendants' current motion is predicated on the theory that the preemption doctrine of the Federal Patent Law exempts a patent owner from state tort liability for communications alleging infringement so long as those communications are not made in bad faith (Document 40, p. 7). Just to state that theory demonstrates why the motion is unfounded as to Matrixx. Matrixx is not an owner of either of the patents here in issue, and therefore cannot invoke the preemption doctrine.

It should not escape this Court's attention that Matrixx's position on ownership is far from consistent. When it seeks to invoke preemption, Matrixx says that it is an "indirect" owner of the patents (Document 40, p. 9). Matrixx then does an about-face and insists that it has no ownership rights in the patents (Document 40, pp. 1 and 12-13). Under the law, Matrixx cannot, absent ownership of the patent, invoke the preemption doctrine. Therefore, as to the state tort claims, GMP need not even allege bad faith on the part of Matrixx.

Zicam's arguments to dismiss stand on no better footing. In the amended complaint, GMP Technologies, LLC ("GMP"), alleges that Zicam made

its allegations concerning alleged infringement in bad faith, and therefore the preemption doctrine does not apply.

In this brief, GMP will first set forth the facts, as established by the pleadings, that show that Zicam and Matrixx are attempting to walk both sides of the street. GMP will then show, by reference to controlling legal authority, that the current motion before this Court must be denied.

I.  The Background Facts

   A.  The Parties and Cause of Action

Plaintiff, GMP Technologies, LLC ("GMP") is an Illinois limited liability company having its principal place of business in the Chicago area. GMP makes an over-the-counter cold therapy sold under the name of "Zinc Cold Therapy Swabs" that is sold in this District and elsewhere as a cold relief remedy. GMP's product has enjoyed success in the marketplace and has been well received.

Defendants, Matrixx and Zicam, both based in Phoenix, Arizona are related companies -- Zicam being a wholly-owned subsidiary of Matrixx. Zicam makes an over-the-counter cold remedy known as "Zicam", a nasal gel used in the treatment of colds. Zicam and/or Matrixx sell the Zicam product nationwide, including in this District. Zicam and Matrixx have represented that the Zicam product is

covered by two U.S. patents, namely U.S. Patent No. 6,365,624 ("the '624 patent") and No. 7,115,275 ("the '275 patent"), directed to zinc gels for use in the treatment of colds. Matrixx and Zicam have represented to the public that GMP's product infringes both patents.

GMP brought this action, alleging, in Count I of its original complaint, that its cold remedy "Zinc Cold Therapy Swabs" does not infringe either the '624 or '275 patents and that the patents are invalid anyway. GMP thus sought a declaratory judgment that neither of the patents had been infringed and that those patents were invalid. In Counts II through IV of the original complaint, GMP asserted state law claims against both Zicam and Matrixx arising from their misrepresentations in their accusations of infringement.

In response to the original complaint, both Zicam and Matrixx brought their first motion to dismiss the state law claims of Counts II through IV on the ground that the state tort claims against both Zicam and Matrixx were preempted by Federal Patent Law absent pleadings of bad faith. GMP insisted that the original complaint did indeed allege bad faith on the part of both Zicam and Matrixx, but GMP, rather than debate the issue, filed an amended complaint specifically alleging bad faith to render moot the motion to dismiss. Zicam and Matrix filed their second motion to dismiss anyway; it is that latter motion to dismiss the

3

amended complaint and Matrixx altogether that is now pending before this Court.

  B. <u>The Events Leading To the Filing Of The Lawsuit</u>

The amended complaint herein alleges that GMP, in June of 2008, entered into a business relationship with The Walgreen Co. ("Walgreens"), and began selling GMP's Zinc Cold Therapy Swabs to Walgreens. Walgreens issued three purchase orders to GMP for the purchase of that product. After Walgreens sold substantially all of the swabs covered by the first purchase order, Walgreens issued its second purchase order. Walgreens sold some of those swabs as well (Document 36, ¶ 10).

After the second purchase order had been filled, Samuel C. Cowley, Executive Vice President of Business Development and General Counsel for Matrixx, sent a letter on October 24, 2008, to the General Counsel of Walgreens, calling to Walgreens' attention a series of patents said to relate to its Zicam cold remedy (Document 36, ¶ 11). Mr. Cowley represented that Matrixx "through its subsidiary Zicam, LLC owns several patents" relating to the Zicam product (Ex. A). He went on to say (Ex. A):

> "These patents provide very broad patent protection against infringement by imitation products. The patents broadly cover viscous zinc compositions and methods of using the compositions, as well as an applicator assembly…."

4

Matrixx also represented that it "has filed additional patent applications relating to its various Cold Remedy products that remain pending in the U.S. Patent Office" (Ex. A).

Mr. Cowley's letter further represented that Matrixx was the owner of the intellectual property, and specifically the patents and applications identified in his letter. He added (Ex. A):

> "Matrixx considers its intellectual property a valuable company asset, one which warrants protection against unauthorized use.... Matrixx has not licensed this intellectual property to any other companies or otherwise authorized its use by others."

The Cowley letter repeatedly suggested that Matrixx is the owner of the intellectual property and has the right to grant licenses thereunder.

A week later, an attorney with the firm of Snell & Wilmer followed up with a further letter to Walgreens General Counsel, stating that he represented Matrixx and Zicam, collectively grouped in the Snell & Wilmer letter as "Zicam". The Snell & Wilmer letter expressed "grave concern" regarding Walgreens having sold the GMP product and made a clear charge of infringement (Ex. B, p. 1):

> "Our investigation suggests that Walgreens Swabs may be covered by various claims of the '275 and '624 patents in that each and every element of various of the claims of those patents appear to be met."

5

Snell & Wilmer demanded that Walgreens "cease and desist from sales" of the GMP product. As a result of those letters, Walgreens returned what had not been sold of the first and second purchase orders and cancelled the third, causing damage to GMP (Document 36, ¶ 11).

      C.     The Events After The Lawsuit Was Filed

Faced with a "cease and desist" demand to one of its customers from Matrixx and Zicam, GMP filed its original complaint before this Court, seeking a declaratory judgment that it had not infringed either the '624 or '275 patents and that the patents were invalid. Because both letters (Exs. A and B) voiced allegations of infringement from both Matrixx and Zicam, GMP included both parties as defendants. In addition to the declaratory judgment claim of Count I, GMP also alleged state law claims of interference with contractual relations (Count II), product disparagement (Count III) and tortious interference with prospective economic advantage (Count IV), including both Matrixx and Zicam as defendants as to each of those counts.

After the complaint had been filed but before it was served, counsel for GMP wrote to Snell & Wilmer advising that the complaint had been filed and providing notice of a status conference as directed by the Court (Ex. C, p. 1). GMP also explained why it contended that the infringement allegations made by

Matrixx and Zicam had no basis, observing that most of the claims of both patents specify viscosities greater than 1500 centipoise and that the viscosity of the GMP composition was less than half of that required by the claims.[*] The claims of the '275 patent are limited to compositions in which the viscosity is, at a minimum, 1500 centipoise (Ex. E, col. 12, ll. 50 et seq.). GMP asked for an explanation of the infringement claim, offering to provide GMP's viscosity data once Matrixx and Zicam explained their infringement position.

Snell & Wilmer responded on February 2, 2009, in effect, refusing to provide any explanation for the claim of infringement made by Matrixx and Zicam. Counsel only asked for GMP's data (Ex. F). GMP reiterated its request for an explanation (Ex. G); Snell & Wilmer did not respond.

Thereafter Zicam and Matrixx filed their first motion to dismiss. For the first time, Matrixx backed away from its earlier allegations suggesting that it had ownership rights in the patents along with Zicam (Ex. A). Indeed, defendants made the startling statement that (Document 19, p. 7):

> "Specifically, as the non-owner of the patents, Matrixx has no right to assert infringement on those patents, nor does it have an

---

[*] The '624 patent claims are limited to compositions having viscosities in excess of 5000, orders of magnitude greater than that of the GMP composition (Ex. D, col. 6, ll. 36 et seq.). Claim 6 did not recite a viscosity, but defined the composition as a gel -- another term for a high viscosity composition.

7

>    independent ownership interest to defend relative to claims of invalidity".

On that basis, defendants suggested that there was "no reason" for Matrixx to remain a party. Matrixx and Zicam further argued that GMP's state law claims were preempted by the Federal Patent Laws, and should be dismissed absent a pleading of bad faith.

Rather than debate whether its pleadings established bad faith, GMP asked for, and obtained, leave of this Court to file its amended complaint expressly including allegations of bad faith in Counts II through IV (Document 36, ¶¶ 18, 21-22 and 24). Both Zicam and Matrixx filed another motion to dismiss notwithstanding the amended complaint, and it is that second motion directed to the amended complaint that is presently before this Court.

II.     Why The Motion Of Matrixx And Zicam Must Be Denied

Matrixx and Zicam proceed in their current motion on the premise that they occupy the same status in invoking the preemption doctrine afforded by the patent laws. What Matrixx has never addressed, however, is the fact that there is no basis on which Matrixx can, absent ownership of the patents, invoke that privilege.

8

A. <u>As A Non-Owner Of The Patents, Matrixx Cannot Assert Preemption</u>

Both Matrixx and Zicam continue to rely on federal patent law preemption to dismiss GMP's state tort claims. Preemption has no application with respect to Matrixx. The Federal Circuit has recognized a <u>patent owner's</u> right to enforce its patent, including statements threatening alleged infringers with suit (<u>Zenith Electronics Corporation</u> v. <u>Exzec, Inc.</u> (Fed. Cir., 1999), 182 F.3d 1340, 1353). Consequently, it is the patent owner who is immune from state tort liability for publicizing their patent in good faith to alleged infringers.

It will not escape this Court's attention that Matrixx's position respecting "ownership" of the two patents in issue has been far from consistent. In its original motion. Matrixx made the argument (Document 19, p. 7)::

> "Specifically, as the non-owner of the patents, Matrixx has no right to assert infringement on those patents, nor does it have an independent ownership interest to defend relative to the claims of invalidity".

Contrast that statement with the Cowley letter (Ex. A) where he portrayed Matrixx as having ownership rights when he wrote (Ex. A):

> "Matrixx considers its intellectual property a valuable company asset, one which warrants protection against unauthorized use. . . . . Matrixx has not licensed this intellectual property to any other companies or otherwise authorized its use by others."

9

While it assured this Court that Matrixx has "no right to assert infringement" (Document 19, p. 7), Matrixx earlier told Walgreens that "Matrixx considers its intellectual property a valuable company asset" (Ex. A). Matrixx did not call the intellectual property a valuable asset of its subsidiary but rather of Matrixx itself -- plainly a misrepresentation which Cowley had reason to know was false.[*]

Now, before this Court, Matrixx continues to assert that it lacks ownership rights in the patents in issue (Document 40, p. 1):

> "In addition, because Matrixx does not have a direct ownership interest in the patents-in-suit, the dismissal of the three state-law counts means there is no longer any case or controversy existing between Matrixx and GMP".

Later, Matrixx says (Document 40, pp. 12-13):

> "Specifically, as the corporate parent of the patent holder, Matrixx does not have the direct ownership interest required to force it to defend GMP's declaratory claims of invalidity or non-infringement. Once the state-law counts are dismissed, there is no reason for Matrixx to remain a party to this litigation."

---

[*] Only the legal owner of a patent and/or exclusive licensees thereof have standing to bring a patent infringement lawsuit. There is no authority that confers standing on a parent company to file a patent lawsuit on a patent owned by its subsidiary (LDM Technologies, Inc. v. Rowen-Waters Group, LLC (E.D. Mich., 2005), 2005 WL 2449300, *2; Ex. H). A parent [company] does not have equitable title in a patent solely by virtue of its ownership of the subsidiary Steelcase Inc. v. Smart Technologies Inc. (W.D. Mich., 2004), 336 F.Supp.2d 714, 719).

Prior to that argument, Matrixx explains that its general counsel Cowley alleges that "Matrixx owned all of the referenced patents" through its subsidiary (Document 40, p. 3). And, just a few pages later, Matrixx argues "that a parent company 'owns' in an 'indirect manner' the patent of its wholly-owned subsidiary" (Document 40, p. 9), attempting to support Matrixx' statement that its intellectual property was a valuable asset that it could enforce. Those statements were false and misleading; the intellectual property is owned by Zicam and, as Matrixx concedes here, it does not have the "direct ownership interest" required to qualify for preemption protection.

Having shown that, Matrixx cannot, as a matter of law, invoke the preemption doctrine because it is not a patent owner, whether the complaint here alleges bad faith on behalf of Matrixx is wholly immaterial. The law imposes a requirement for bad faith when bringing an action against a patent owner for such state law claims. Since Matrixx admittedly is not a patent owner, no bad faith is required. Therefore, the allegations contained in Counts II to IV are sufficient as against Matrixx, separate and apart from any requirement for bad faith.[*]

---

[*] Matrixx's argument that there is no case or controversy between Matrixx and GMP (Document 40, p. 1) is wholly unfounded. The case or controversy between GMP and Matrixx is based upon the tortious conduct by Matrixx as alleged in Counts II to IV. And it goes without saying that this Court has jurisdiction over that case or controversy based on a diversity of citizenship.

11

B.  GMP Has Sufficiently Pled Bad Faith
    With Respect To The State Tort Claims

GMP submits that it has pled bad faith in the allegations of its amended complaint to overcome defendants' motion to dismiss. After all, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which entitles him to relief" (Foboha Gmbh v. Gram Technology, Inc., (N.D. Ill., 2008) 2008 WL 4619795 *6; Ex. I). Indeed, the purpose of a motion to dismiss is to test the sufficiency of the complaint and not to rule on its merits (Gibson v. City of Chicago (7th Cir., 1990), 910 F.2d 1510, 1520). And, as the Court said in Baig v. The Coca-Cola Company (N.D. Ill., 2009), 2009 WL 1470176 *2 (Ex. J):

> "In analyzing the motion, the court must accept the well-pleaded allegations as true, and view those allegations in the light most favorable to plaintiff."

Rather than recognize the foregoing, defendants, in effect, are asking this Court to rule on the merits. Now is not the time for that.

And, there is no doubt that defendants are indeed addressing the merits of the controversy. Defendants argue that the allegations that the statements made by Zicam and Matrixx are "false" are "nothing but sophistry" (Document 40, p. 8).

12

But defendants fail to take the allegations, as they must, as true. Defendants' motion to dismiss should be denied on that basis alone.

As to defendants claim that GMP's amended complaint is deficient, this Court will remember that, in <u>800 Adept, Inc.</u> v. <u>Murex Securities, Ltd.</u> (Fed. Cir., 2008), 539 F.3d 1354, 1370, the Federal Circuit has held the "bad faith" standard under the preemption doctrine has a subjective and objective component. The objective component requires a showing that the infringement allegations are objectively baseless. The subjective component requires a showing that the patentee, in enforcing a patent, demonstrated subjective bad faith (539 F.3d at 1370). The objectively baseless standard requires a showing of incorrectness or falsity, or disregard for either (<u>Mikohn Gaming Corporation</u> v. <u>Acres Gaming, Inc.</u> (Fed. Cir., 1998), 165 F.3d 891, 896-97).

Defendants' letters to Walgreens which are extensively referred to in the amended complaint are packed with falsities, most significantly in their assertion of Matrixx's ownership of the '624 and '275 patents. Both of the previous and current memoranda, filed by defendants in support of their motions to dismiss, confirm that Matrixx is not the patent owner.

The Cowley letter asserts that Matrixx filed additional patent applications relating to various cold remedy products casting a cloud of broad patent protection

13

over such products. Courts have found bad faith in instances where a party, like Matrixx and Zicam here, improperly seeks to enforce patent rights of a patent application (<u>Foboha Gmbh</u> v. <u>Gram Technology, Inc.</u> (N.D. Ill., 2008), 2008 WL 4619795, *6; Ex. I). Here, the bad faith standard is met where defendants misrepresent their patent rights. Defendants' misrepresentations do not stop there. Matrixx proclaims that the patents provide "very broad patent protection" and that it "has not licensed this intellectual property to any other companies" -- representing that it has complete exclusivity of viscous zinc compositions, when such is not the case (Ex. A). The substance of the Cowley letter is unmistakably objectively baseless.

Defendants' subsequent letter by Snell & Wilmer (Ex. B) does nothing to remedy any of the misrepresentations of the Cowley letter, again misrepresenting Matrixx as a patent owner. When read together, both letters recite a number of inconsistencies and misrepresentations, including the rightful owner of the patents and the scope of the owner's intellectual property rights.

GMP believes the allegations of bad faith are sufficiently pled in the amended complaint. Even if the Federal Patent Law preemption were available to Matrixx and/or Zicam, any preemption is overcome by GMP's demonstration that both letters contain falsities and misrepresentations that are objectively reckless --

14

their actions taken as a whole unmistakably demonstrate subjective bad faith (Document 36, pp. 4-9).[*] Clearly, GMP has alleged sufficient facts exist to support the state tort claims upon which relief should be granted.

CONCLUSION

    For the reasons stated above, defendants' second motion to dismiss should be denied.

                                       Respectfully submitted,

                                       /s/ Keith V. Rockey
                                       KEITH V. ROCKEY (ID #02360624)
                                       KATHLEEN A. LYONS (ID #06186939)
                                       AVANI C. MACALUSO (ID #06280832)
                                         Rockey, Depke & Lyons, LLC
                                         Sears Tower, Suite 5450
                                         233 South Wacker Drive
                                         Chicago, Illinois 60606
                                         Phone: (312) 277-2006
                                         Facsimile: (312) 441-0570

                                     Attorneys for Plaintiff GMP Technologies, LLC

---

[*] Defendants still take issue with the sufficiency of GMP's pleadings in view of the Supreme Court's decision in Bell Atlantic Corporation v. Twombly (2007), 550 U.S. 544. The Court is reminded that Bell did not change the notice pleading requirements, and that a party need only plead facts sufficient to put the alleged infringer on notice as to what he must defend (McZeal v. Sprint Nextel Corporation (Fed. Cir., 2007), 501 F.3d 1354, 1357). Ironically, it is Zicam whose counterclaims fail to meet the minimum notice pleading standard by failing to include a statement of ownership of the '624 and '275 patents (Document 38, pp. 11 et seq.).

15

## CERTIFICATE OF SERVICE

The undersigned counsel for plaintiff hereby certifies that on July 20, 2009 true and correct copies of PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS II-IV OF THE AMENDED COMPLAINT AND TO DISMISS ALL CLAIMS AGAINST DEFENDANT MATRIXX and EXHIBITS A through J were filed electronically with the Clerk of the Court through the Court's CM/ECF System which will provide electronic notification of such filing to the following counsel of record for defendants:

> Michael J. Kelly, Esq.
> Jennifer L. Fitzgerald, Esq.
> Leland W. Hutchinson, Esq.
> David S. Becker, Esq.
> David L. Ter Molen, Esq.
> Jacob D. Koering, Esq.
> Freeborn & Peters LLP
> 311 S. Wacker Drive
> Suite 3000
> Chicago, IL 60606-4617

/s/ Keith V. Rockey
One of Plaintiff's Attorneys